# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 14-785V
(Not to be published)

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

CYNTHIA HAMILTON *and* ROBERT HAMILTON, *parents and natural guardians of* R.M.H., *a minor*,

     Petitioners,

  v.

SECRETARY OF HEALTH AND HUMAN SERVICES,

     Respondent.

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Filed: April 12, 2018

Attorney's Fees & Costs; Reasonable Basis; Final Award.

*Robert Joel Krakow*, Law Office of Robert J. Krakow, P.C., New York, NY, for Petitioners

*Ann Donohue Martin*, U.S. Dep't of Justice, Washington, DC, for Respondent

## DECISION GRANTING FINAL AWARD OF ATTORNEY'S FEES AND COSTS[1]

  On August 28, 2014, Cynthia and Robert Hamilton filed an action on behalf of their minor child, R.M.H., seeking compensation under the National Vaccine Injury Compensation Program. The Petition alleged that the Haemophilus Influenza Type B ("Hib"), MMR, Pneumococcal ("Prevnar"), and Hepatitis B vaccines that R.M.H. received on August 30, 2011, and the Varicella, DTaP, and Influenza ("flu") vaccines received on November 2, 2011, caused R.M.H to develop chronic encephalopathy, manifesting as autism-like symptoms. *See* Petition ("Pet.") at 1-4.

---

[1] Although this Decision has been formally designated "not to be published," it will nevertheless be posted on the Court of Federal Claims's website in accordance with the E-Government Act of 2002, 44 U.S.C. § 3501 (2012). **This means the Decision will be available to anyone with access to the internet**. As provided by 42 U.S.C. § 300aa-12(d)(4)(B), however, the parties may object to the Decision's inclusion of certain kinds of confidential information. Specifically, under Vaccine Rule 18(b), each party has fourteen days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). Otherwise, the Decision in its present form will be available. *Id*

1

Petitioner has now filed a motion requesting final attorney's fees and costs, dated March 12, 2018. *See generally* Final Motion for Attorney Fees and Costs ("Fees App.") (ECF No. 45). Petitioners request reimbursement of attorney's fees in the amount of $26,269.94 (representing $25,657.80 in attorney's fees and $612.14 in costs). *Id.* at 2.

For the reasons stated below, I hereby **GRANT** Petitioner's Motion, awarding attorney's fees in the total amount of $26,269.94.

**Factual and Procedural History**

   A. *Case Facts Relevant to Dismissal*

As the August 2014 Petition alleged, R.M.H received a variety of vaccinations in August 2011 and November 2011, which Petitioners argue caused R.M.H. to develop chronic encephalopathy subsequently manifesting as developmental regression/autism-like symptoms. Although it is now well settled in the Vaccine Program that claims alleging a link between vaccinations are highly likely to be unsuccessful, given the results of the Omnibus Autism Proceedings ("OAP") cases plus numerous cases decided since then, Petitioners filed their claim in 2014 alleging a purportedly new causation theory based on a vaccine-induced aggravation of an underlying mitochondrial disorder and a resulting encephalopathy. This "new" theory of causation, however, mirrored arguments set forth in many post-OAP cases, which resulted in decisions denying entitlement due to the insufficiencies in the scientific evidence offered in support. *See, e.g.*, *Anderson v. Sec'y of Health & Human Servs.*, No. 02-1314V, 2016 WL 8256278 (Fed. Cl. Spec. Mstr. Nov. 1, 2016), *mot. for review den'd*, 131 Fed. Cl. 735 (2017), *aff'd*, 2018 WL 1673373 (Fed. Cir. Apr. 6, 2018); *T.M. v. Sec'y of Health & Human Servs.*, No. 08-284V (Fed. Cl. Spec. Mstr. Aug. 9, 2016), *mot. for review den'd*, 133 Fed. Cl. 78 (2017); *Holt v. Sec'y of Health & Human Servs.*, No. 05-136V, 2015 WL 4381588, at *2-3 (Fed. Cl. Spec. Mstr. June 24, 2015).

Consistent with the above, Petitioners were unable herein to show that R.M.H. suffered any type of acute encephalopathic injury after receipt of his vaccinations – and furthermore could not provide reliable evidence linking the vaccines at issue to R.M.H.'s resulting developmental problems. More specifically, R.M.H. showed no signs of an encephalopathy following vaccination. Rather, doctor's notes from close-in-time visits indicate that he received treatment for itchy skin and allergies (Ex. 38 at 15), dermatitis (Ex. 38 at 10), and otitis media (Ex. 38 at 7). Furthermore, it does not appear that any of R.M.H.'s treating physicians linked his regression/autism-like symptoms to his vaccinations. *See, e.g.*, Ex. 38 at 2; Ex. 10-1 at 3; Ex. 45 at 3.

   B. *Case Progression and Dismissal*

This action was initiated roughly three and half years ago. Pet. at 1. According to the billing record, Petitioners' counsel, Mr. Robert Krakow, began reviewing the file and obtaining medical records in early August 2014 (about *two weeks* prior to filing the case). Mr. Krakow filed the case on August 28, 2014, and thus continued to work to obtain additional medical records in the following months. Because R.M.H. received his first round of vaccinations relevant to this claim on August 30, 2011, the earliest possible limitations cutoff for the claim was August 30, 2014.[2] Thus, from the start of his involvement in this case, Mr. Krakow was under some time pressure to evaluate its merits.

Mr. Krakow began reviewing medical records in early August 2014, although the record reveals that the majority medical records were filed between late November 2014 and June 2015 (it appears that counsel filed records intermittently thereafter, or through April 2016). *See* ECF No. 37. Respondent filed the Rule 4(c) Report on August 31, 2015 (ECF No. 31). According to the billing invoices, Mr. Krakow specifically reviewed pediatric records and clinic notes on August 13, 2014. Ex. 51, Tab 2 (ECF No. 45-2) to Fees App. at 1. Thus, it is likely that counsel was aware of some of the claim's deficiencies at this time. *Id.* (referencing August 13, 2014 telephone conversation with Petitioners "re case mito [sic], and chronology and contemporaneous records issue"). I note, however, that as of August 2014, I had not heard or decided any cases alleging autism as an injury as a result of an encephalopathic injury caused by underlying mitochondrial dysfunction (although other special masters had heard such a theory - and found it wanting. *See Bast v. Sec'y of Health & Human Servs.,* No. 01-565V, 2012 WL 6858040 (Fed. Cl. Spec. Mstr. Dec. 20, 2012), *aff'd*, 117 Fed. Cl. 104 (2014).

Following a telephonic status conference on April 25, 2016, I issued an Order staying this matter until August 31, 2016, due to other parallel proceedings involving autism injury claims then pending review at the Court of Federal Claims or the Court of Appeals for the Federal Circuit that might bear on the case's resolution. *See* Order, dated Apr. 27, 2016 (ECF No. 39). Despite these pending cases, I informed Petitioners that their claim might have reasonable basis problems, because portions of Petitioners' causation theory had been repeatedly rejected in numerous recent post-OAP cases. In that same Order, I also explained to Petitioners that the medical record evidence offered in the present matter largely did not support their claim. *Id.* Upon preliminary review, the medical records showed little evidence of a vaccine-induced encephalopathic reaction. *Id.*

The case remained stayed until June 30, 2017. On July 6, 2017, I issued an Order directing Petitioners to discuss with counsel the likelihood that their claim remained viable in light of the

---

[2] *See* Section 16(a)(2). Careful Program counsel often make sure to file a claim no later than three years from the date of *administration* of the vaccine at issue, even though the statute runs from the onset of symptoms (whether or not they are recognized at the time as such.)

3

decisions from the Court of Federal Claims (dismissing similar causation theories as unpersuasive). Petitioners thereafter filed a motion to dismiss on August 18, 2017, acknowledging that they did not expect to be able to establish entitlement in this case. ECF No. 40. I issued a decision dismissing the case for insufficient proof on September 11, 2017 (ECF No. 41).

### C. Fee Application

On March 12, 2018, Petitioners filed a motion seeking a final award of attorney's fees and costs. Motion, dated Mar. 12, 2018 (ECF No. 45) ("Fees App."). The present fees motion requests an award for time incurred for work on the matter between August 2014 and March 2018. Petitioners seek fees for the work of counsel, Mr. Robert Krakow, plus some paralegal tasks performed by the same counsel (but billed at a paralegal rate). In particular, Petitioners request $26,269.94 (representing $25,657.80 in attorney's fees and $612.14 in costs). Ex. 51, Tab 2 to Fees App. (ECF No. 45-2) at 17. In accordance with General Order No. 9, Petitioners indicate that they have incurred costs related to the matter, totaling $400.00. Fees App. at 2.[3]

Respondent filed a document reacting to the fees request on March 26, 2018, indicating that she is satisfied that the statutory requirements for an award of attorney's fees and costs are met in this case, but deferring to my discretion the determination of the amount to be awarded. ECF No. 47 at 2-4. Petitioner filed a Reply on that same day, affirming that he fully relies on the facts, law, and arguments set forth in his fee application. (ECF No. 48).

Although Respondent did not challenge Petitioners' fee request on reasonable basis grounds, Petitioners argue that an award of attorney's fees and costs is nonetheless warranted in this case. Fees. App. at 3. In their fee application, Petitioners maintain counsel acted expeditiously in reviewing R.M.H.'s records and in monitoring developments in the case law and medical research related to the medical theory relied on to support causation in this matter. *Id.* Petitioners assert that counsel performed the majority of his work on this matter prior to my Order staying the case (pending resolution of other post-OAP cases centering on a similar medical theory). *Id.* Thereafter, Petitioners note that counsel performed only wind-down actions following the stay, once I raised concerns regarding the claim's overall viability. *Id.* at 3-4, 8.

## **Analysis**

---

[3] Petitioners stated in their fee application that they directly incurred the $400 filing fee pursuant to the General Order No. 9. Fees App. at 2. Petitioners indicated that the General Order No. 9 Statement was filed as Ex. 51, Tab 5 to their application. *Id.* However, Tab 5 was never filed. I will reimburse Petitioners for the filing fee, but I deem all other personal costs waived in light of Petitioners' failure to file the correct documentation.

**I. Reasonable Basis Standard**

I have in prior decisions set forth at length the relevant legal standards governing attorney's fees awards in unsuccessful cases, and in particular the criteria to be applied when determining if a claim possessed "reasonable basis."[4] *See, e.g.*, *Allicock v. Sec'y of Health & Human Servs.*, No. 15-485V, 2016 WL 3571906 at 4-5 (Fed. Cl. Spec. Mstr. May 26, 2016), *aff'd on other grounds*, 128 Fed. Cl. 724 (2016); *Gonzalez v. Sec'y of Health & Human Servs.*, No. 14-1072V, 2015 WL 10435023, at *5-6 (Fed. Cl. Spec. Mstr. Nov. 10, 2015). In short, a petitioner can receive a fees award even if his claim fails, but to do so he must demonstrate the claim's reasonable basis through some objective evidentiary showing and in light of the "totality of the circumstances." The nature and extent of an attorney's investigation into the claim's underpinnings, both before and after filing, is a relevant consideration. *Cortez v. Sec'y of Health & Human Servs.*, No. 09-176V, 2014 WL 1604002, at *6 (Fed. Cl. Spec. Mstr. Mar. 26, 2014); *Di Roma v. Sec'y of Health & Human Servs.*, No. 90–3277V, 1993 WL 496981, at *2 (Fed. Cl. Spec. Mstr. Nov. 18, 1993) (citing *Lamb v. Sec'y of Health & Human Servs.*, 24 Cl. Ct. 255, 258–59 (1991)).

The Court of Federal Claims recently provided further illumination as to the standards that should be used to evaluate if the totality of the circumstances warrant a finding that reasonable basis existed. *Cottingham v. Sec'y of Health & Human Servs.,* 134 Fed. Cl. 567 (2017), *remanded to* 2017 WL 6816709 (Fed. Cl. Spec. Mstr. Dec. 12, 2017), *appeal docketed*, No. 15-1291V (Fed. Cl. Jan. 1, 2018). As Judge Williams therein stated, a special master should consider "the novelty of the vaccine, scientific understanding of the vaccine and its potential consequences, the availability of experts and medical literature, and the time frame counsel has to investigate and prepare the claim." *Id*. at 574.

An even more recent Federal Circuit decision also casts doubt on the weight to be given to the statute of limitations factor under the "totality of the circumstances" analysis. *Simmons v. Sec'y of Health & Human Servs.*, 875 F.3d 632, 635 (Fed. Cir. 2017) (finding "[w]hether there is a looming statue of limitations deadline . . . has no bearing on whether there is a reasonable factual basis for the claim raised in the petition").[5] In a past decision, I determined that *Simmons* is best

---

[4] Although good faith is one of the two criteria that an unsuccessful petitioner requesting a fees award must satisfy, it is an easily-met one – and Respondent does not question it in this case. *Grice v. Sec'y of Health & Human Servs.*, 36 Fed. Cl. 114, 121 (1996) (in the absence of evidence of bad faith, special master was justified in presuming the existence of good faith).

[5] The *Simmons* decision also took into consideration a number of facts that bear on its conclusion, including that (a) the *Simmons* claimant had never offered any objective proof that he had experienced GBS, despite ample time to do so, and (b) instead, the claimant relied *solely* on the need to act in the face of the limitations period expiration. *Simmons*, 875 F.3d at 635. Thus, the Court determined that "because the special master *only* found that there was a reasonable basis for [the claim] because of the impending statute of limitations deadline," the award of fees constituted a misapplication of the law, and was a reversible abuse of discretion. *Id.* (emphasis added). In the present case, I find such facts to be wholly distinguishable. Here, counsel possessed adequate objective proof (in the form of medical

understood to hold that the pending expiration of the Vaccine Act's statute of limitations period is "by *itself* not grounds for a reasonable basis finding, as it does not constitute objective evidence in support of the claim." *Amankwaa v. Sec'y of Health & Human Servs.*, No. 17-036V, 2018 WL 1125853, at *7 (Fed. Cl. Spec. Mstr. Jan. 5, 2018), *appeal docketed*, No. 17-036V (Fed. Cl. Jan. 31, 2018). Thus, in my view, *Simmons* does not expressly or impliedly alter or abrogate the totality of the circumstances test, but rather "emphasizes the need for petitioners to locate objective proof supporting a claim[,]" exclusive from the claim's looming expiration of statute of limitations period. *Id.*

## II. Petitioners' Claim Had Sufficient Reasonable Basis for a Fees Award

Although Respondent does not challenge reasonable basis in this case, I find it necessary to address the topic in my analysis. Based on my review of the case history, coupled with the evidence of counsel's course of representation of Petitioner as set forth in the billing records, I find that the claim did possess sufficient reasonable basis at the relevant time for a fees award, despite its evident underlying weakness.

To begin, a significant consideration is the autism/developmental nature of the injury alleged in the preset matter. As noted above, Petitioners allege that R.M.H. suffered from a vaccine-induced encephalopathy (manifesting as autism-like symptoms) due to an underlying mitochondrial disorder. There is no doubt that claims involving a vaccine-induced autism injury have been unsuccessful in the Vaccine Program. Claims alleging that vaccines cause autism have failed repeatedly, as reflected in the decisions rendered in the OAP as well as those thereafter.[6] Thus, the special masters have been applying heightened scrutiny to any newly-filed autism injury cases (given the countless ones previously, and unsuccessfully, litigated), and often encourage petitioners asserting such claims to dismiss because of the high likelihood that the claim will fail, resulting in a waste of judicial resources. Having represented many such claimants in the past, Mr. Krakow is well-versed in the deficiencies surrounding such a claim. *See, e.g., R.V.*, 2016 WL 3882519; *T.M. v. Sec'y of Health & Human Servs.*, No. 08-284V (Fed. Cl. Spec. Mstr. Aug. 9, 2016), *mot. for review den'd*, 133 Fed. Cl. 78 (2017).

---

record evidence) to file the claim and determine that additional documentation was needed to further investigate the underlying causation theory.

[6] Other special masters have invoked reasonable basis as a justification for dramatically cutting back fees requests in unsuccessful autism cases even where the claims were tried, in whole or part. *See, e.g., Hardy v. Sec'y of Health & Human Servs.*, No. 08–108V, 2016 WL 4729530 (Fed. Cl. Spec. Mstr. Aug. 16, 2016) (awarding less than $8,000 of request for approximately $41,000 in fees and costs in autism claim that was tried, where special master determined case lacked reasonable basis despite trial); *Hashi v. Sec'y of Health & Human Servs.,* No. 08–307V, 2016 WL 5092917 (Fed. Cl. Spec. Mstr. Aug. 25, 2016) (awarding less than half of request for approximately $31,000 in fees and costs in unsuccessful autism case, based on lack of reasonable basis).

At the time this case was filed in 2014, however, the relevant medical records contained evidence supporting in some respects the new causation theory on which Petitioners relied. As noted previously, Petitioners described this theory as a significant aggravation of a "metabolic disorder and/or a mitochondrial disorder" resulting in a "chronic encephalopathy manifested as autism-like symptoms and related conditions." Pet. at 23-24. This theory of causation mirrored arguments set forth in many former OAP cases (that resulted in decisions denying entitlement and dismissing the theory as unpersuasive), but which had not been decided at this time. *See, e.g.*, *Pope v. Sec'y of Health & Human Servs.*, No. 14-078V, 2017 WL 2460503 (Fed. Cl. Spec. Mstr. May 1, 2017); *Cunningham v. Sec'y of Health & Human Servs.*, No. 13-483V, 2016 WL 4529530 (Fed. Cl. Spec. Mstr. Aug. 1, 2016), *mot. for review den'd*, 2017 WL 1174448 (Fed. Cl. Jan. 25, 2017); *Holt v. Sec'y of Health & Human Servs.*, No. 05-136V, 2015 WL 4381588, at *2-3 (Fed. Cl. Spec. Mstr. June 24, 2015). Thus, at the time this case was filed, the theory was still pending review before other special masters—the very reason I proposed to stay the case until decisions were issued. I thus do not find that Mr. Krakow erroneously pursued this claim in light of its underlying nature, given what was then known about this claim.

I also agree with Petitioners that counsel acted appropriately in attempting to represent Petitioners while taking note of my concerns about the claim's viability. As the billing record reveals, Mr. Krakow expeditiously reviewed Petitioners' claim and worked to determine its likelihood of success in light of the new causation theory. *See generally* Ex. 51, Tab 2 to Fees App. He obtained medical records in August 2014, reviewed those, and determined that additional records were needed to properly evaluate the claim. Mr. Krakow continued to work expeditiously up until I issued a stay in the case in April 2016 and sought dismissal promptly when I voiced my concerns about the claim's viability following the pending decisions issued in similar cases.

Although the billing invoices offered in support of the present fees motion demonstrate that counsel filed this claim without the benefit of a full review of the record, the records counsel did possess revealed some possible deficiencies with Petitioners' claim. For instance, in the Petition, Petitioners allege that R.M.H. suffered from "a neurodevelopmental disorder," but then later claim that R.M.H suffered from an encephalopathy manifesting as autism-like symptoms. Pet. at 2-4. Upon review, however, the medical records generally support diagnoses related to developmental regression/autism only – not evidence of an encephalopathic reaction. *See, e.g.*, Ex. 25, 27; Ex. 38 at 17; Ex. 38 at 2-3; Ex. 45 at 3-5; Ex. 46 at 1-2. However, the records counsel did possess at the time of filing (including records from the Frye Clinic and other pediatric records) showed evidence of developmental regression and the possibility of an underlying mitochondrial disorder (a theory which, at the time of filing, was being litigated in other Program cases). *See* Ex. 51, Tab 2 to Fees App. at 1. Thus, this case is not one where the claim's feasibility could have been fully vetted prior to its filing, and did warrant additional investigation.

My analysis is not complete, however. I must determine, based on the totality of the circumstances and the evidentiary showing, *if* reasonable basis ended sometime after filing but before dismissal. It is recognized that cases can lose reasonable basis as they progress, and as evidence is adduced casting doubt on a claim's strength. *Curran v. Sec'y of Health & Human Servs.*, No. 15–804V, 2016 WL 4272069 (Fed. Cl. Spec. Mstr. June 22, 2016), *aff'd in part and remanded on other grounds,* 130 Fed. Cl. 1, 11 (Jan. 3, 2017). I find that reasonable basis existed through the time I ordered the matter stayed. Until then, counsel's prosecution of this claim was proper; he subsequently performed only wind-down costs following my own warnings regarding the claim's overall viability (and the release of pending decisions dismissing Petitioners' causation theory).

This claim likely would not have been successful considering the underlying injury alleged, and therefore was properly dismissed. But it has long been understood that the *success* of a claim is not determinative of the claim's reasonable basis, an inquiry which considers whether objective proof exists to support it. *See Livingston v. Sec'y of Health & Human Servs.*, No. 12-268V, 2015 WL 4397705, at *6 (Fed. Cl. Spec. Mstr. June 26, 2015) ("An assessment of reasonable basis looks not to the likelihood of success but more to the feasibility of the claim." (internal quotation marks omitted)). Here, that test is satisfied, and therefore the case had sufficient reasonable basis through its dismissal for a fees award.

Determining here that counsel should receive fees for an autism claim like that asserted herein presents a close case. Had the claim been filed after some of my own autism decisions (all of which have been upheld on appeal), I would likely take a more dim view at awarding *any* fees, and would also likely cut back the fees to be awarded. However, because counsel in this case was amenable to the matter being stayed thereby demonstrating, and because the filing of the claim (as well as counsel's initial investigation of the claim's viability) preceded the bulk of the decisions bearing on the theory at issue, I do not find that reasonable basis should have ended sooner than my stay order - and hence an award of fees through that date is appropriate.

**III. Calculation of Fee Award**

Determining the appropriate amount of a fees award is a two-part process. The first part involves application of the lodestar method – "multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate." *Avera v. Sec'y of Health & Human Servs.*, 515 F.3d 1343, 1347-48 (Fed. Cir. 2008) (quoting *Blum v. Stenson*, 465 U.S. 886, 888 (1984)). The second part involves adjusting the lodestar calculation up or down. Avera, 515 F.3d at 1348.

An attorney's reasonable hourly rate is determined by the "forum rule," which bases the

proper hourly rate on the forum in which the relevant court sits (Washington, DC, for Vaccine Act cases), except where an attorney's work was not performed in the forum and there is a substantial difference in rates (the *Davis* exception). *Avera,* 515 F.3d at 1348 (Fed. Cir. 2008, citing *Davis Cty. Solid Waste Mgmt. & Energy Recovery Special Serv. Dist. v. U.S. Envtl. Prot. Agency*, 169 F.3d 755, 758 (D.C. Cir. 1999)). As the Federal Circuit stated in *Avera*, inclusion of the *Davis* exception ensures against a "windfall" – meaning paying a lawyer in a rural or less expensive locale more than she would otherwise earn, simply because she is litigating a case in a court of national jurisdiction. *Avera,* 515 F.3d at 1349. After the hourly rate is determined, the reasonableness of the total hours expended must be determined. *Sabella v. Sec'y of Health & Human Servs.*, 86 Fed. Cl. 201, 205-06 (2009). This inquiry mandates consideration of the work performed on the matter, the skill and experience of the attorneys involved, and whether any waste or duplication of effort is evident. *Hensley v. Eckerhart*, 461 U.S. 424, 437(1983).

With all of the above in mind, I turn to Petitioners' request. Petitioners ask that counsel, Mr. Krakow, be reimbursed at varying rates for work performed from 2014-2018. Petitioners request $396 per hour for Mr. Krakow's work in 2014, with increases to $413 per hour in 2015, $425 per hour in 2016, and $435 per hour in 2017-2018. *See* Ex. 51, Tab 2 to Fees App. at 18. Petitioners request rates ranging from $125-$140 per hour for paralegal work (completed by Mr. Krakow, but billed at a lower rate) completed in 2015-2018. *Id.*

In my past decisions, I have determined that Mr. Krakow's firm, located in New York, is entitled to forum rates. *See, e.g., Laderer v. Sec'y of Health & Human Servs.,* No. 09-097V, 2016 WL 3044838, at *3 (Fed. Cl. Spec. Mstr. Apr. 20, 2016). In addition, Chief Special Master Dorsey recently awarded the increased rate requested herein for 2017 for Mr. Krakow and his paralegal time (which he sometimes performs but bills at the lower rate). *See Moxley v. Sec'y of Health & Human Servs.*, No. 006-213V, 2017 WL 5080289 (Fed. Cl. Spec. Mstr. Oct. 12, 2017). Furthermore, Mr. Krakow's request of $435 per hour for work completed in 2018 (which is the same as his rate for 2017) is reasonable, and consistent with the form rate chart set forth on the Court of Federal Claims's website,[7] and will be awarded.

The majority of the hours expended on this matter (76.50 hours in total) appear to be reasonable in light of the facts discussed above, since they reflect work performed on this matter before mid-2016. Petitioners' counsel also efficiently used his time to resolve the case. I do not find any particular billing entries to be objectionable, nor has Respondent identified any as such. Therefore, the requested hours will be reimbursed in full.

---

[7] *See* Office of Special Masters Attorneys' Hourly Rate Fee Schedule: 2018, https://www.uscfc.uscourts.gov/node/2914 (last accessed on Apr. 3, 2018).

Finally, Petitioners also request that counsel be reimbursed for $612.14 in costs (representing the filing fee, medical records requests, and postage costs). Ex. 51, Tab 2 to Fees App. at 18.  The costs requested by Petitioners also appear to be reasonable and will be awarded.

## CONCLUSION

For the aforementioned reasons, I award a total of **$25,869.94** (representing $25,657.80 in attorney's fees and $212.14 in costs) as a lump sum in the form of a check jointly payable to Petitioners and Petitioners' counsel, Robert Krakow, Esq. A check for $400.00 should also be made payable to Petitioners directly for costs personally incurred during this matter. In the absence of a motion for review filed pursuant to RCFC Appendix B, the clerk of the Court is directed to enter judgment herewith.[8]

**IT IS SO ORDERED.**

/s/ Brian H. Corcoran
Brian H. Corcoran
Special Master

---

[8] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the Parties' joint filing of notice renouncing the right to seek review.